UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RODNEY PLANT,<br><br>                     Plaintiff,<br><br>     v.<br><br>CMS, CCA, KIM SPAULDING, DR. APRIL DAWSON, and DR. DAVID AGLER,<br><br>                     Defendants. | Case No. 1:11-cv-00316-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

       Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC), is proceeding pro se in this civil rights action. On August 28, 2013, the Court dismissed—pursuant to stipulation—all claims against Defendants Corrections of America (CCA) and Dr. David Agler. (Dkt. 68.) On September 18, 2013, the Court granted summary judgment in favor of Defendant Dr. April Dawson. (Dkt. 72.) Because Plaintiff was authorized to proceed on his Second Amended Complaint only against Defendants Spaulding, Dawson, and Agler (Dkt. 17), the only Defendant remaining in this case is Defendant Spaulding.

       Pending before the Court is Defendant Spaulding's Motion to Dismiss (Dkt. 76). Plaintiff has not responded to this motion, despite the Court's express order on March 12, 2014 giving him thirty (30) days in which to file a response. (Dkt. 82, p. 6.) Having fully

reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will decide this matter on the record without oral argument. D. Idaho L. R. 7.1.

## FACTUAL ALLEGATIONS

Plaintiff Rodney Plant ("Plaintiff") is an inmate in the custody of the Idaho Department of Corrections. He is currently housed at the Idaho Correctional Center ("ICC"). Between April 2004 and September 2005 and between October 2007 and November 2008, Plaintiff was housed at the Idaho Maximum Security Institution ("ISMI") (Dkt. 58-8, Affidavit of Dr. April Dawson in Support of Dr. April Dawson's Motion for Summary Judgment ("Dawson Aff."), Ex. A.) At all times relevant to Plaintiff Second Amended Complaint, Plaintiff was housed at ISMI.

On August 7, 2012, Plaintiff filed a Second Amended Complaint alleging deliberate indifference against Corizon, CCA, Kim Spaulding, Dr. April Dawson and Dr. David Agler for failing to timely replace his prosthetic leg, and for failing to provide him with a cane, crutch or wheelchair while his prosthetic leg was being replaced. (Dkt. 16.) Plaintiff claims he had to hobble on his broken prosthetic leg during this time period, resulting in permanent damage to his other leg and foot. (*Id*. at ¶ 13.) On September 7, 2012, the Court reviewed the Second Amended Complaint pursuant to 28 U.S.C. § 1915A, and entered an Order permitting Plaintiff to proceed on his Eighth Amendment claim against Defendants Kim Spaulding, Dr. Dawson and Dr. Agler. (Dkt. 17.) Dr.

**Memorandum Decision and Order - 2**

Agler and Dr. Dawson have since been dismissed from the suit.  (Dkt. 68, Dkt. 72.)

## DEFENDANT SPAULDING'S MOTION TO DISMISS

Plaintiff alleges in his Second Amended Complaint that Defendant Spaulding is an employee of IDOC who served as a grievance coordinator during times at issue in this complaint.  (Dkt. 16, ¶ 6.)  Plaintiff alleges that Defendant Spaulding failed to timely provide him with a cane, crutch or wheelchair while his prosthetic leg was being replaced.  (*Id.* at ¶ 24.)  He contends that Defendant's deliberate indifference to his serious medical needs violated his Eighth Amendment right against cruel and unusual punishment.  (*Id.* at ¶ 25.)

In her Motion to Dismiss, Defendant Spaulding contends that she was not personally involved in any constitutional violation; Plaintiff does not allege that Spalding is a physician or had any supervisory control over the treating physicians at IMSI or had any involvement in his medical care.  Defendant Spaulding also argues that a mere delay is not sufficient to allege personal involvement.  Lastly, Spaulding contends that she is entitled to qualified immunity because there is no clearly established law requiring a "prison grievance coordinator who is not alleged to have any medical training nor alleged to have any supervisory authority over treating physicians to nonetheless contravene, interfere with, or second guess the decisions of those physicians."  (Dkt. 76-1, p. 6.)

1. **Standard of Law Applicable to a Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair

**Memorandum Decision and Order - 3**

notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A defendant may move to dismiss a complaint if that complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (alteration omitted).

The Supreme Court has identified two "working principles" that underlie this dismissal standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of

**Memorandum Decision and Order - 4**

discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When a court is considering a motion to dismiss, it must "'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007) (per curiam)).

## 2.     Standard of Law for Section 1983 Claims

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her

**Memorandum Decision and Order - 5**

own misconduct."). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

Even if a plaintiff is able to show a violation of a constitutional right under § 1983, a defendant may still be entitled to dismissal on the basis of qualified immunity. The doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id.* True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).

**Memorandum Decision and Order - 6**

A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right"; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009).

3.  **Eighth Amendment Standard of Law**

Plaintiff asserts that Defendant Spaulding's actions violated the Eighth Amendment's prohibition against cruel and unusual punishment. The Eighth Amendment requires that prisoners receive minimally adequate medical care, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

**Memorandum Decision and Order - 7**

*overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Non-medical prison personnel are generally entitled to rely on the opinions of medical professionals with respect to appropriate medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are

**Memorandum Decision and Order - 8**

mistreating (or not treating) a prisoner.") (internal quotation marks omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A mere delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there is no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). And there is no

**Memorandum Decision and Order - 9**

constitutional right to an outside medical provider of one's own choice. *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

4.  **Analysis**

Plaintiff has not sufficiently alleged that Defendant Spaulding personally participated in his allegedly inadequate medical care or that Spaulding is subject to supervisory liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Starr*, 652 F.3d at 1207. Rather, Plaintiff "tenders naked assertions devoid of further enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and alteration omitted). Plaintiff alleges that his broken prosthetic was brought to Defendant Spaulding's attention. (Sec. Am. Compl. at ¶ 24.) He does not detail what was inadequate about Spaulding's response or how she failed to respond, nor does he assert that Spaulding had any authority to prescribe treatment for his broken prosthetic. Plaintiff has not alleged that Spaulding is medically trained, and there is nothing in the Second Amended Complaint to plausibly suggest that Spaulding was deliberately indifferent to Plaintiff's medical needs and that a reasonable person in Spaulding's position would have determined that Plaintiff's treatment was inferior. *See Snow*, 533 U.S. at 202. There is no allegation that Spaulding was personally involved in any delay in providing Plaintiff the cane, nor that any wrongful conduct by Spaulding led to a delay in providing Plaintiff a cane.

Further, to the extent that Plaintiff's allegations against Defendant Spaulding, as a

**Memorandum Decision and Order - 10**

grievance coordinator, are claims that she failed to respond to respond to his grievances, such failures are not constitutional violations.  There is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*,  488 U.S. 898 (1988); *see Sandin v. Connor*, 515 U.S. 472 (1995) (noting that liberty interests are generally limited to freedom from restraint).  Further, there is no allegation that he was denied access to the grievance system itself or access to the courts.

The Second Amended Complaint contains no allegations of what Spaulding's role was, other than grievance coordinator, in Plaintiff's alleged constitutional violation.  Plaintiff has not shown that clearly established law would have put a reasonable prison grievance coordinator on notice that her actions on the information Plaintiff provided would be unlawful.  *See Saucier*, 533 U.S. at 202.  There are no allegations of when the broken prosthetic was brought to Spaulding's attention or what Plaintiff specifically requested or told Defendant Spaulding.  The Second Amended Complaint contains no answers.  Plaintiff has filed to state a claim.

Further, qualified immunity is an alternative basis for dismissal because the facts alleged by Plaintiff fail to establish a violation of a constitutional right.  There is no clear allegation that what Spaulding allegedly did amounts to a constitutional violation.

## CONCLUSION

Plaintiff's Second Amended Complaint fails to satisfy Rule 8 by demonstrating that Plaintiff has a plausible Eighth Amendment claim against Defendant Spaulding.  Defendant Spaulding was not personally involved with Plaintiff's medical treatment, or

**Memorandum Decision and Order - 11**

lack thereof as alleged by Plaintiff.  Plaintiff has not sufficiently alleged that Spaulding's conduct violated his constitutional rights.  Accordingly, Plaintiff's claims against Spaulding will be dismissed.

## ORDER

**IT IS ORDERED:**

1) Defendant Spaulding's Motion to Dismiss (Dkt. 76) is GRANTED.

2) Plaintiff's claims against Defendant Spaulding are DISMISSED with prejudice.

DATED:  **July 31, 2014**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge